IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LORETTA HEDRICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19-cv-971 |
| | ) | |
| AT&T UMBRELLA BENEFIT PLAN NO.1, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

This matter arises out of a dispute between Plaintiff Loretta Hedrick and Defendant AT&T Umbrella Benefit Plan No. 1 over the payment of short-term and long-term benefits[1] under 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA") (ECF No. 1 at 1.) Before the Court are cross-motions for summary judgment pursuant to Rule 56. (ECF Nos. 21; 25.) Additionally, Defendant has filed a motion to strike pursuant to Local Rule 83.4(a)(3). (ECF No. 27.) For the reasons set forth below, Plaintiff's Amended Motion for Summary Judgment will be denied, Defendant's Motion for Summary Judgment will be granted, and Defendant's motion to strike will be denied.

---

[1] Though neither party addresses Plaintiff's entitlement to long-term benefits in depth, the Court does find, that the language of the Plan clearly indicates that in order for a claimant to be considered for long-term disability benefits, she much first have received the maximum amount (26 weeks) of short-term disability benefits under the Plan. (ECF No. 15-1 at 29.) Here, it is undisputed that Plaintiff did not exhaust the potential twenty-six weeks permitted for short-term disability benefits.

## I. PROCEDURAL AND FACTUAL HISTORY

Plaintiff is a former employee of AT&T Mobility Services, LLC ("AT&T"), (ECF Nos. 1 ¶ 5; 5 ¶ 5), where she was a Business Customer Service Specialist I during the relevant time period, (ECF Nos. 22 at 4; 26 at 2, 3). In that role, Plaintiff's primary duties included: answering business customers' inquiries, initiating service orders, handling customer requests, maintaining a working knowledge of company products and services, making recommendations to customers, and using operational systems to process purchases. (ECF No. 15-1 at 117–18.) On October 18, 2018, Plaintiff underwent surgery on her right knee due to a degenerative tear of her lateral meniscus. (ECF No. 15-4 at 69.) Plaintiff submitted a short-term disability claim related to this injury and surgery which was approved for the period of October 25, 2018 through November 4, 2018. (ECF No. 15-2 at 13.) Plaintiff's disability benefits were then extended through November 20, 2018. (ECF No. 15-4 at 60.) On November 28, after review of additional medical documentation, her disability benefits were again extended through December 16, 2018. (ECF No. 15-4 at 44.)

On December 17, 2018, Plaintiff contacted the Claims Administrator and indicated that she was scheduled to have surgery on her right shoulder. (ECF No. 15-2 at 29.) The Plaintiff subsequently informed the Claims Administrator that she in fact had the surgery, (*id.*), and the Claims Administrator confirmed her statement, (*id.* at 30). After that confirmation, and after Plaintiff and her treating physicians provided additional information and records on a number of occasions, Plaintiff's disability benefits were extended several times, (*id.* at 33; ECF No. 15-4 at 21), ultimately until February 11, 2019, (ECF No. 15-3 at 127).

By letter dated February 28, 2019, one of Plaintiff's treating physicians indicated that she believed Plaintiff should remain out of work until a March 11, 2019, appointment. (ECF

*Id.* at 119.) She additionally stated that Plaintiff was continuing to participate in a physical therapy program. (*Id.*) Given these ongoing updates, the Claim Administrator sought an internal review of Plaintiff's medical information to determine whether the medical information substantiated Plaintiff absence from work beyond February 12, 2019. (ECF No. 15-2 at 50.) On March 4, 2019, Dr. Brecher, a board-certified orthopedic surgeon, reviewed Plaintiff's medical records, including notes of two of Plaintiff's treating physicians, and indicated to the Claims Administrator that it was his opinion that Plaintiff was not disabled from her job as of February 12, 2019.[2] (ECF No. 15-3 at 114–16.) After receiving Dr. Brecher's opinion, the Claims Administrator determined that the Plaintiff's benefits would be terminated as of February 12, 2019, and Plaintiff was informed of this decision by letter dated March 13, 2019. (*Id.* at 102–04.) The letter also advised Plaintiff of her right to appeal the determination.[3] (*Id.* at 104–08.)

Plaintiff, through her attorney, appealed the denial of short-term benefits and requested that review of her appeal not begin until she had the opportunity to obtain and provide more medical records for review. (*Id.* at 65.) Plaintiff also requested copies of all documents the Claim Administrator relied upon in reaching the denial determination and for information regarding the process for filing a claim for long-term disability. (*Id.* at 66.) Defendant obliged Plaintiff's request to delay the review of the appeal and indicated that the appeal review process would continue on June 12, 2019. (*Id.* at 78.) Plaintiff submitted additional medical records

---

[2] While Dr. Becher's report refers to the employee as a male and uses male pronouns throughout, there is no dispute that the report pertained to Plaintiff.

[3] Though the letter indicates that Plaintiff will have the right to bring a lawsuit against the AT&T Umbrella Benefit Plan No. 3, Plaintiff has brought this claim against AT&T Umbrella Benefit Plan No. 1. In its Answer, Defendant indicates that the AT&T Umbrella Benefit Plan No. 3 was formerly known as AT&T Benefit Plan No. 1. (ECF No. 5 at 1.)

3

from Dr. Meryl Snow and a statement from Dr. Amanda Robertson-Shepherd on May 28, 2019. (ECF No. 15-2 at 146–97.) On May 30, 2019, Plaintiff's attorney informed Defendant that no additional materials would be submitted for consideration of the appeal. (*Id.* at 199.) After reviewing medical records and materials provided by Plaintiff as well as reports from two independent physicians advisors, the Claims Administrator determined that Plaintiff's claim for short-term disability benefits should be granted as to the period of February 12, 2019 through March 11, 2019, and denied for the period of March 12, 2019 forward. (*Id.* at 94.)

Following Defendant's decision on Plaintiff's appeal, Plaintiff initiated the instant action. (ECF No. 1.) Plaintiff seeks a declaration that she is entitled to short-term and long-term disability benefits under the AT&T Mobility Disability Benefits Program ("the Plan"). (*Id.* at 3.) In the alternative, Plaintiff requests that this Court remand her claim back to the Claims Administrator for further Review. (*Id.*) Plaintiff and Defendant both moved for summary judgment on October 2, 2020. (ECF Nos. 21; 23.) Defendant argues that the evidence contained in the record support its contention that it did not abuse its discretion in reaching its determination on Plaintiff's claim for disability benefits. (ECF No. 22 at 19.) Plaintiff, on the other hand, argues that the Court should find that Defendant abused its discretion in denying her claim for benefits from March 12, 2019 forward, and therefore she is entitled to the benefits she seeks. (ECF No. 26 at 20.)

## II. MOTION TO STRIKE

Before reaching the parties' substantive motions, the Court will first address Defendant's motion to strike. Defendant moves to strike Plaintiff's Amended Memorandum and Motion for Summary Judgment. (ECF No. 27.) Defendant contends that Plaintiff filed her amended motion after the deadline for dispositive motions set forth in the Court's July 20,

4

2020 Order and without seeking permission of the Court to file the amended documents in violation of Local Rule 56.1 (*Id.* at 2.) According to Defendant, this justifies striking the documents from the record. (*Id.* at 3.) Plaintiff asserts that she filed her initial Motion for Summary Judgement in compliance with the Court's July 20, 2020 Order, but upon reviewing the filing realized that the font was not in compliance with Local Rule 7.1(a). (ECF No. 28 at 1.) Accordingly, Plaintiff's attorney contacted the Clerk's Office, who directed her to refile the documents, with the correct typeface, as amended documents. (*Id.* at 1–2.)

Review of the record supports Plaintiff's assertion that the amended filings are substantively the same as the initial filings. The only difference is the corrected typeface. Local Rule 56.1(g) provides that a "dispositive motion which is not noticed and filed within the prescribed time will not be reached by the Court prior to trial unless the Court determines that its consideration will not cause delay to the proceedings." L.R. 56.1(g). The Court determines that a purely typographical change to Plaintiff's motion and corresponding brief will not in any way cause a delay in the proceedings. As such, the Court will consider Plaintiff's amended motion and brief, and those documents will serve as the operative filings for the purpose of this Opinion and Order. Therefore, Defendant's motion to strike will be denied. The Court next considers the cross-motions for summary judgment.

### III. MOTIONS FOR SUMMARY JUDGMENT

#### A. Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the

5

nonmoving party." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (internal citations and quotations omitted). "It is axiomatic that in deciding a motion for summary judgment, a district court is required to view the evidence in the light most favorable to the nonmovant" and to "draw all reasonable inferences in his favor." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (citing *Jacobs*, 780 F.3d at 568). That means that a court "cannot weigh the evidence or make credibility determinations," *Jacobs*, 780 F.3d at 569 (citations omitted), and thus must "usually" adopt "the [nonmovant's] version of the facts" even if it seems unlikely that the moving party would prevail at trial, *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)). Where, as in this case, the Court has before it cross-motions for summary judgment, the Court reviews each motion separately to determine if either party is entitled to judgment as a matter of law. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

### B. Disability Benefits Plan

Under the Plan at issue, eligible employees may receive certain disability benefits if they are deemed disabled. For the purposes of short-term disability, the Plan defines disabled as when an eligible employee is "absent from Active Employment and unable to perform the duties of [her] Customary Job due to illness . . . or injuries." (ECF No. 15-1 at 19.) For the purposes of long-term disability under the Plan, an eligible employee is considered disabled if, during "the first twenty-four (24) months after [her] exhaustion of Short-Term Disability Benefits, [she is] continuously unable to perform [her] Customary Job."[4] (*Id.* at 28.) Pursuant

---

[4] After the initial twenty-four month period, a participant would continue to be considered disabled if she is determined to have a "Total Disability" that is caused by something other than a mental health claim. (ECF No. 15-1 at 28.)

6

to the Plan, for a claimant to qualify for long-term disability benefits, she must have first exhausted twenty-six weeks of short-term disability benefits. (*Id.* at 29.)

The Plan provides that participants are no longer eligible for short-term or long-term disability benefits if they cease to be disabled under the terms of the Plan. (*Id.* at 16, 27, 33.) The Plan further indicates that whether a participant meets the definition of disability under the Plan is "determined at the sole discretion of the Claims Administrator." (*Id.* at 17.)

### C. Discussion

In reviewing a denial of benefits under ERISA, the Supreme Court has explained that generally a court should be "guided by principles of trust law," analogizing a plan administrator to a trustee and deeming their benefit determinations to be fiduciary acts. *Metro. Life Ins. Co., v. Glenn*, 554 U.S. 105, 111 (2008) (quoting and citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111-113 (1989)). "Principles of trust law require courts to review a denial of plan benefits 'under a *de novo* standard' unless the plan provides to the contrary." *Id.* (quoting and citing *Firestone,* 489 U.S. at 115).

In reviewing a denial of benefits under an ERISA-governed plan, a district court must first determine whether the relevant plan documents confer discretionary authority on a plan administrator to make a determination of whether a claimant is eligible for benefits. *DuPerry v. Life Ins. Co. of N. Am.*, 632 F.3d 860, 869 (4th Cir. 2011). Where the plan grants "the administrator or fiduciary discretionary authority to determine eligibility for benefits…[t]rust principles make a deferential standard of review appropriate." *Glenn*, 554 U.S. at 111 (quoting *Firestone*, 489 U.S. at 111, 115); *see also Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 341 (4th Cir. 2000). Thus, an administrator's denial of benefits is reviewed

7

under an abuse of discretion standard in such a case. *Booth*, 201 F.3d at 341. Courts look to whether the language of the plan in question is sufficient to convey discretionary authority to its plan administrator. *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 268–69 (4th Cir. 2002). The Fourth Circuit has stated that there is no specific phrase or language required to find that a plan administrator has been granted discretionary authority. *Id.* at 268. However, a plan's "intention to confer discretion" on the plan administrator "must be clear." *Id.*

In the instant matter, it is undisputed that the Plan's express terms provide discretionary authority to the Claim Administrator. For instance, the Plan provides that:

> The Plan Administrator administers claims and appeals for disability Benefits under this Program on a contract basis with the Claims Administrator. The Plan Administrator has discretionary authority to interpret the provisions of the Program and to determine entitlement to disability Benefits. The Claims Administrator has full discretionary authority to interpret the provisions of the Program and to determine Benefits available under the Program.

(ECF No. 15-1 at 51.) In a section entitled "Who Decides Your Appeals," The Plan also explains that:

> The Plan Administrator has delegated discretion and authority to decide appeals to the Claims Administrator. . . . The Claims Administrator will have full and exclusive authority and discretion to grant and deny appeals under the Program. The decision of the Claims Administrator regarding any appeal will be final and conclusive.

(*Id.* at 43.) Because the Plan's language clearly grants the Claims Administrator complete discretionary authority over both eligibility determinations and the interpretation of applicable provisions, the Court concludes that the denial of Plaintiff's benefits here is reviewed under an abuse of discretion standard. *See Carden v. Aetna Life Ins. Co.*, 559 F.3d 256, 260 (4th Cir. 2009).

Under this deferential standard of review in the context of ERISA, the test is whether the administrator's benefits decision is reasonable. *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 630 (4th Cir. 2010). The Fourth Circuit has held that the plan administrator's determination is reasonable when it is the result of a "deliberate, principled reasoning process" supported by substantial evidence. *Id.* at 630 (citation omitted). "Substantial evidence consists of less than a preponderance but more than a scintilla of relevant evidence that 'a reasoning mind would accept as sufficient to support a particular conclusion.'" *Whitley v. Hartford Life & Accident Ins. Co.*, 262 F. App'x 546, 551 (4th Cir. 2008) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). The administrator's decision must "rest on good evidence and sound reasoning" and result "from a fair and searching process." *Harrison v. Wells Fargo Bank, N.A.,* 773 F.3d 15, 21 (4th Cir. 2014) (quoting *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322–23 (4th Cir. 2008)). "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decision-maker's judgment that the court does not reverse merely because it would have come to a different result in the first instance." *Evans*, 514 F.3d at 322.

The Fourth Circuit has established an eight-factor, non-exclusive analytical framework for assessing the reasonableness of a plan administrator's decision ("*Booth* factors"). *Booth*, 201 F.3d at 342–43 (4th Cir. 2000). The eight *Booth* factors are:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

9

*Id.* All eight *Booth* factors need not be, and may not be, relevant in a given case. *Helton v. AT&T, Inc.*, 709 F.3d 343, 357 (4th Cir. 2013). Review of the parties' arguments as well as the evidence contained in the record indicates that the main *Booth* factors relevant to the discussion of the instant matter are: the adequacy of the materials reviewed by the Claim Administrator, whether the decision-making process was reasoned and principled, and whether the decision-making process comported with the procedural and substantive requirements of ERISA. The Court will evaluate each of these factors in turn. However, before undertaking an analysis of the reasonableness of the Plan Administrators' determinations, the Court must address the scope of the Administrative Record available for its review.

### 1. *Scope of the Court's Review*

Defendant asserts that Plaintiff is asking this Court to consider evidence "which she did not provide to the Claims Administrator," specifically that she underwent surgery on her left shoulder in June 2019. (ECF No. 30 at 4.) Though indeed evidence of Plaintiff's shoulder surgery was not present in the administrative record the Claim Administrator reviewed, Plaintiff nevertheless references the surgery on countless occasions in her arguments concerning the medical conditions that gave rise to the need for surgery. (*See e.g.*, ECF No. 29 at 4.) Out of an abundance of caution, the Court will clarify the scope of its review.

The Fourth Circuit has held that "consideration of evidence outside of the administrative record is inappropriate when a coverage determination is reviewed for abuse of discretion. The rationale for this rule is that, to the extent possible, the administration of ERISA plans should be left to plan fiduciaries, not federal courts." *Helton*, 709 F.3d at 352

(internal citations omitted). However, a court may consider evidence outside of the administrative record when such review is necessary to adequately assess the plan administrator's decision under the *Booth* factors, "and the evidence was known to the plan administrator when it rendered its benefits determination." *Id* at 356.; *see also Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994) ("[A]n assessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time.").

Rather than presenting an absolute bar to evidence outside of the administrative record, courts undertaking a review of ERISA cases should take "a more nuanced approach to consideration of extrinsic evidence on deferential review." *Helton*, 709 F.3d at 352. For instance, the court in *Helton* permitted the admission of corporate records which a Benefits Committee could have considered had it made an effort to do so. *Id.* at 356–67. The court concluded that consideration of the extra-record evidence was appropriate because a plan administrator can be charged with knowledge of information in certain circumstances, particularly if that information was acquired by its employees in the scope of their employment or if the information was contained in the contents of its books and records. *Id.*

Here, Plaintiff references an alleged surgery on her left shoulder that took place on June 20, 2019, in support of her contentions that Defendant abused its discretion in failing to review her job duties that required use of her upper extremities. (ECF No. 26 at 14.) However, the evidence does not reflect that Plaintiff informed Defendant that she actually underwent surgery on her left shoulder prior its determination of her appeal. Moreover, the evidence does not demonstrate that Defendant had any knowledge that Plaintiff actually underwent the

11

surgery from any other source prior to reaching its determination. In fact, after the alleged surgery had occurred, Defendant offered to suspend its review of her appeal and provided Plaintiff with the opportunity to submit additional information on August 21, 2019, (ECF No. 15-2 at 101), and Plaintiff, through counsel, declined to do so, requesting instead that Defendant continue with review of the appeal, (ECF No. 15-2 at 100). Here, there is no evidence that suggests Defendant could have readily accessed any evidence outside of the record, particularly as to whether Plaintiff underwent surgery on her left shoulder in June 2019. Moreover, there is no evidence that this information was somehow in Defendant's control or known to Defendant when it rendered its decision denying Plaintiff's short-term disability benefits. As such, the Court will limit its review to the information contained in the administrative record that was before the Claims Administrator in reaching the determination and will not consider the alleged surgery Plaintiff underwent on her left shoulder in June 2019. The Court will now proceed to review of the relevant *Booth* factors.

*2. Relevant Booth Factors*

> *i. The Adequacy of the Materials Considered to Make the Decision and the Degree to which that Material Supports that Decision*

Though the parties do not expressly frame it as such, one of the main disputes before the Court is whether the Claim Administrator reviewed adequate materials in making the determination to deny Plaintiff's benefits. Plaintiff argues that the Claims Administrator abused her discretion by failing to consider physical duties that were required of Plaintiff in performing her job duties. (ECF No. 26 at 11.) Plaintiff also contends that the Claims Administrator abused her discretion by considering the medical opinion of independent reviewing physicians who did not appropriately assess the physical duties Plaintiff was required

12

to perform in completing her job duties,[5] (*id.*), nor consider the totality of Plaintiff's condition, (*id.* at 18.) Defendant responds, on the other hand, that the Claim Administrator and the independent reviewing physicians did consider Plaintiff's essential job functions in evaluating her claims for disability benefits. (ECF No. 30 at 6.) Defendant likewise asserts that the Claims Administrator and the independent reviewing physicians had considered the totality of Plaintiff's medical issues in evaluating her claim for disability benefits. (*Id.* at 11.)

The Fourth Circuit has made clear that "the primary responsibility for providing medical evidence to support a claimant's theory rests with the claimant." *Harrison*, 773 F.3d at 24. Plaintiff has provided no authoritative support that suggests that the independent reviewing physicians and claims administrators are to seek out additional information on unknown and unprovided job duties or somehow know of medical conditions and/or procedures that are not contained in the record.

The record is clear that, in deciding Plaintiff's claims for benefits, Defendant considered all evidence in the administrative record, as well as the essential functions of Plaintiff's job duties that were provided. Moreover, despite Plaintiff's assertion that the independent physician reviewers did not consider the totality of her medical conditions, the record reflects that the physicians did consider the medical records Plaintiff submitted regarding her left shoulder, including MRI results and physician-provided notes. (ECF No. 15-2 at 107–15, 116–23, 133–138, 139–46.) Defendant further offered to suspend its review and expressly informed Plaintiff of her ability to submit additional information that could "be

---

[5] This argument closely aligns with Plaintiff's argument regarding another *Booth* factor, namely that Defendant failed to undertake a reasoned and principled decision-making process. The Court will thus reserve its analysis of this argument for its discussion below.

13

in the form of comment, additional medical records, documentation or other relevant information" that could include " [a] job description, chart notes, diagnostic tests, and hospital summaries." (*Id.* at 101.) Plaintiff declined to do so, (*id.* at 100), yet now contends that Defendant did not consider adequate information in reaching its benefits determination. The Fourth Circuit has held that a claimant who did not submit supplemental evidence to disprove the existing record indicating that she was not disabled could not then "prevail on an argument that [her employer] had insufficient evidence to make a reasoned decision." *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 608 (4th Cir.1999)

The evidence in the record supports a finding that the Claims Administrator, as well as the independent reviewing physicians, did consider the totality of the Plaintiff's disabilities as disclosed in the record and known to the Claims Administrator in reaching their conclusions and determinations. As such, the Court determines that the evidence supports a finding in favor of Defendant with respect to the adequacy of materials reviewed.

## ii. *Whether the Decision-Making Process Was Reasoned and Principled*

The fifth *Booth* factor explores whether a fiduciary's decision-making process was reasoned and principled. "A fiduciary that glosses over an analysis that would direct an award[,] in favor of an analysis that would support denial of benefits[,] does not engage in a principled and reasoned decision making process." *L.B. ex rel. Brock v. United Behav. Health, Inc.*, 47 F. Supp. 3d 349, 360 (W.D.N.C. 2014). Plaintiff's argument that Defendant did not undertake a reasoned and principled decision-making process largely mirrors the argument made with respect to the adequacy of material covered. Plaintiff asserts that Defendant failed to "undertake any investigation or inquiry of Plaintiff's employer to inquire as to what the

physical requirements of her job were" and that such a failure demonstrates that Defendant did not meet this bar. (ECF No. 26 at 14–15.)

Plaintiff cites to the Fourth Circuit's decision in *Harrison* in support of her contention that the Defendant had an "absolute obligation" to procure information that may have proven her eligibility for benefits. (ECF No. 26 at 15.) Further, Plaintiff asserts that *Wilkinson v. Sun Life & Health Ins. Co.*, 674 F. App'x 294 (4th Cir. 2017), demonstrates that a plan administrator cannot ignore "readily available" information that is needed for review of a claim for benefits. (ECF No. 26 at 15–16.) The Court does not find either of Plaintiff's arguments persuasive, or are they supported by evidence in the record.

In *Harrison*, the court found that a claims administrator failed to satisfy ERISA's full and fair review requirements when it did not contact and obtain records from a medical provider that it was aware the plaintiff visited for treatment. *Harrison*, 773 F.3d at 22–23. In that case, the plan-commissioned independent reviewing physician noted that the record was incomplete and without that information he could not provide the claims administrator with an opinion on the claimant's alleged disability. *Id.* at 23–24. The facts in *Harrison* are distinguishable from the instant matter. Here, the claims administrator was not told by the independent reviewing physicians that the record was somehow incomplete or that any additional medical information should be obtained in order to make a benefits determination.

Furthermore, despite Plaintiff's characterization of what the court found in *Wilkinson*, the Fourth Circuit made clear that "[c]laimants are more familiar with their medical and work history" than a claim administrator would be and that "the primary responsibility for providing

15

medical evidence to support a claimant's theory rests with the claimant." *Wilkinson*, 674 Fed. Appx. at 301 (quoting *Harrison*, 773 F.3d at 24).

In the instant matter, the Plaintiff has pointed to no evidence in the record that indicates that she notified the plan administrator that the job description in the record for her was somehow incomplete or inappropriate. It is unclear how Defendant would have been placed "on notice" that Plaintiff's job duties extended beyond the listed job description or how a different job description with additional physical duties that required use of Plaintiff's upper extremities was readily available to Defendant. Therefore, the Court concludes that the evidence supports Defendant's claim that its decision-making process was reasoned and principled.

### iii. Consistency with Procedural and Substantive Requirements of ERISA

ERISA requires that every employee benefit plan "afford a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133 (2008). More specifically, the plan must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits . . . has been denied, setting forth the specific reasons for such denial." *Id.* A fiduciary reviewing a denial of ERISA benefits must satisfy certain "core requirements" before its review can be deemed "full and fair." *Sawyer v. Potash Corp. of Saskatchewan (Potashcorp)*, 417 F. Supp. 2d 730, 744 (E.D.N.C. 2006), *aff'd sub nom. Sawyer v. Potash Corp. of Saskatchewan*, 223 F. App'x 217 (4th Cir. 2007). The "core requirements" set forth in the Code of Federal Regulations implementing the statutory requirements, mandate that (1) a claimant have at least sixty days to appeal an initial denial of benefits; (2) a claimant

16

have an opportunity to submit written comments, documents, records, and other information relating to his claim; (3) a claimant have reasonable access to relevant documents in the administrator's possession; and (4) the administrator must take into account all comments, documents, records, and other information submitted by the claimant. *Id.* (citing 29 C.F.R. § 2560.503-1(h)(2)); *see also Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 235 (4th Cir. 2008).

With respect to Defendant's process comporting with the requirements of ERISA, here it is undisputed that Plaintiff was provided a notice in writing that her claim for benefits was initially denied and the reason for the denial. (ECF No. 15-3 at 102–03.) Second, the record is clear that Plaintiff was given the opportunity and adequate time to appeal the initial benefits determination and to submit additional comments or records. (*Id.* at 104–09.) Not only that, Plaintiff did in fact exercise her appeal rights with respect to the initial denial of benefits, (*id.* at 95–97), and provided additional medical records, (ECF No. 15-2 at 146–97). Finally, it is undisputed that Plaintiff's additional medical records and comments were considered, and Defendant provided a response to the appeal after which Plaintiff failed to respond. (*Id.* at 94–95.)

Nonetheless Plaintiff contends that Defendant's review of her claim was somehow insufficient and failed to provide the full and fair review required by ERISA, including a failure to review her claim in conjunction with her actual job duties. (ECF No. 26 at 13–14.) It appears Plaintiff makes this claim because Defendant did not seek information as to what physical duties Plaintiff may have performed in her customary job other than those disclosed in the record. (*See id.* at 14.) Though Plaintiff makes this argument, she fails to provide the

17

Court with any indication of what additional physical duties might have existed, nor did she make any such description when she was asked for additional documentation and responses on a number of occasions during the review process. Moreover, Plaintiff does not cite to any relevant code, statutory provision, or any other pertinent authority that would support her contention.

Review of the evidence contained in the record demonstrates that there is no genuine dispute over whether the procedures undertaken by Defendant provided a full and fair review of Plaintiff's claim. Accordingly, *Booth* factor six weighs in favor of summary judgment in Defendant's favor.

> *iv.* *The Remaining Booth Factors*

The remaining Booth factors—the language of the Plan, the purpose and goals of the Plan, the consistency of the fiduciary's interpretation, external circumstances relevant to the exercise of discretion, and the fiduciary's motives and potential conflicts of interest—have not been raised by either party, and do not appear to be relevant to the Court's analysis.

### D. CONCLUSION

Given the evidence in the record, the Court determines that there is no genuine dispute of material facts concerning whether the Claims Administrator's decision was reasonable and the result of a deliberate and principled reasoning process supported by substantial evidence, and thus Plaintiff's Amended Motion for Summary Judgment will be denied and Defendant's Motion for Summary Judgment will be granted. As such, the Court enters the following:

**[ORDER TO FOLLOW ON NEXT PAGE]**

# ORDER

IT IS THEREFORE ORDERED that Defendant's motion to strike, (ECF No. 27), is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Amended Motion for Summary Judgment, (ECF No. 25), is DENIED, and Plaintiff's original Motion for Summary Judgment, (ECF No. 23), is TERMINATED AS MOOT.

It is FURTHER ORDERED that Defendant's Motion for Summary Judgment, (ECF No. 21), is GRANTED.

This the 16th day of February 2021.

/s/ Loretta C. Biggs
United States District Judge